STATE *el rel.* R. F. WINGATE, Att'y General, *v.* A. THOMPSON, State Auditor.

*Salary—Attorney General.*—The act of the General Assembly of February 13, 1865, (Sess. Acts 1865, p. 124,) increasing the salary of the Attorney General, took effect from its passage and was entirely prospective in its operation. It did not retrospectively increase the salary from the commencement of the quarter of that year.

State ex. rel. Attorney General v. State Auditor.

## Petition for Mandamus.

To the petition of relator the Auditor made the following return:

The facts stated in the petition of Robert F. Wingate, Attorney General, are admitted in so far as that said Robert F. Wingate, Attorney General, did present an account to the State Auditor for fifteen hundred dollars, for salary as Attorney General from January 1, 1865, to June 30, 1865, being for two quarters, which account was not allowed in full by me, the State Auditor, for the reasons following:

1. The salary of the Attorney General was by law fixed at the rate of $1,500 (fifteen hundred dollars) per annum, and was the lawful rate at the time when the present incumbent, said R. F. Wingate, entered upon his office and qualified, to-wit, on January the 8th, 1865. (Laws 1856–7, p. 175–6.)

2. The salary of said Attorney General was raised to the sum of three thousand dollars ($3,000) annually by the act of February 15, 1865, which said act (Laws 1865, p. 124) ends in these words: "This act to take effect and be in force from and after its passage," and therefore did take effect from and after February 15, 1865, but not prior to said day.

3. If the last clause of said act, here above cited, had not been attached to said acts, the provisions of said act would have taken effect ninety days after its passage. (2 R. C. p. 1022, § 2.)

An instance illustrative of this point is the act of February 16, 1865, (Laws 1865, p. 122,) in favor of the chaplain and physician of the Penitentiary, which act took effect, and the increased rate of their respective salaries began, ninety days after the passage of the act, to-wit, on May 16, 1865.

4. Whenever an act intends that the salary of an officer shall be paid, at the increased rate or otherwise, for any time prior to the passage of the act, then the language in the body of the act specifies the time from which the salary shall

be paid at the rate established by the act. This is done, for instance, in the act fixing the salary of the *ex-officio* Superintendent of Common Schools, approved February 10, 1864, (Laws 1864, p. 103,) which act specifies that the salary shall commence on March 23, 1863. And the act of February 13, 1864, raising the salary of the then Treasurer, G. C. Bingham, (Laws 1864, p. 109), specifies that the increase of salary shall take effect from October 1, 1863. No provision of a similar nature is contained in the act of February 15, 1865, relating to the salary of the petitioner, said R. F. Wingate, as Attorney General.

5. The words "annual" and "per annum" have reference only to the rate at which the salary is to be computed and paid; they do not necessarily mean that the salary shall commence from the first day of January, and certainly not in this instance of the case of the petitioner. If he, or any other officer, did not receive a commission and qualify until, for instance, February 15, 1865, although such officer by law might have taken possession of his office on the first day of January, then he surely could not claim payment for the time prior to February 18, 1865, merely because his annual salary was to be a certain sum.

By an act of February 18, 1865, (Laws of 1865, p. 121,) it is provided that "the judges of the Circuit Courts shall receive two thousand dollars annually. The several circuit attorneys four hundred dollars annually." No circuit judge nor circuit attorney has claimed, under the provisions of this act, the increased salary for any services prior to the date of the act, to-wit, February 18, 1865.

It would then seem that the present judiciary of the State of Missouri was unanimous in sustaining the interpretation given by the State Auditor to the clause, "This act to take effect from and after its passage."

6. The Supreme Court of the State of Missouri has established a precedent to the point. The salaries of the judges of this court were increased from $2,500 to $3,000 per annum; by the act of January 16, 1860, (Laws of

1860, p. 90,) the Chief Justice, Hon. Wm. Scott, drew his quarter's salary on April 2, 1860, and instructed Mr. Morrison (then State Treasurer) as follows: " You will please see when the new law went into effect, and make out the account accordingly"—(his letter is on file in the Auditor's office) ; and he drew his salary as stated on the voucher (on file in the Auditor's office) from January 1st to January 15, at $2,500, $103.02; from January 16 to March 31, at $3,000, $626.38—making $729.40. The Hon. E. B. Ewing, another of the judges of the Supreme Court, presented his account in person, on April 2, 1860, in the same words and figures; so did the third judge, the Hon. W. B. Napton ; all of which vouchers are on file in my office, and have been examined in preparing this my answer ; and have been examined, approved and passed upon by the legislative committees controlling the Auditor's office.

7. By the act of February 27, 1857, (Laws of 1857, p. 175–6,) the " annual salary of the Attorney General" was raised from $800 to $1,500. The incumbent of the office at the time presented his account on April 2, 1857, in these figures: " From January 1 to February 26, at $800, $126.06; from February 27 to March 31, at $1,500, $137.50; which voucher is on file in my office, and the above is a true copy of it," &c.

WAGNER, Judge, delivered the opinion of the court.

Prior to the 15th day of February, 1865, the salary of the Attorney General of this State was fixed by law at fifteen hundred dollars per annum. By an act approved on the said 15th day of February, it was raised to the sum of three thousand dollars, which said act by its terms was in force and took effect from and after its passage. (Laws 1865, p. 124.) It is contended that by virtue of the words " annual salary," therein used, the increased salary should commence on the first of January preceding, being the beginning of the quarter of that year.

There is no just or reasonable rule of interpretation

which will warrant such a conclusion. By our general law, acts take effect ninety days after their approval, unless a different time be designated in the act itself. The Legislature in this instance fixed the time at which the law should go into force, and it will not be presumed that they meant any other or different time. There is no room left here for construction; there is neither ambiguity nor obscurity in the act. It will always be intended that the law-making power use words in their usual and proper signification; hence courts will not deviate from the common usage of the words, unless it is made clearly to appear that they were intended in a different sense, or there be good and substantial reasons for affixing a different meaning to them. The language employed in the act is clear and explicit, and to make it relate back and cover the previous period, before it took effect, would be to violate and torture the ordinary meaning of words. Had the Legislature intended that the increased salary should commence from the beginning of the year, they would have said so when fixing the period at which time the act should go into operation. As they did not see fit and proper to do so, there is no warrant for giving it a different meaning than that expressed therein.

The relator is entitled to salary at the rate of fifteen hundred dollars annually, till the 15th day of February, 1865, and at the rate of three thousand dollars thereafter.

With the concurrence of the other judges, the mandamus is refused.